[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10394

_____

Agency No. 2828-16

HIGHPOINT TOWER TECHNOLOGY INC.,

Petitioner - Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent - Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court

_____

(July 24, 2019)

Before ED CARNES, Chief Judge, ANDERSON and JULIE CARNES, Circuit
Judges.

ANDERSON, Circuit Judge:

This is an appeal by Highpoint Tower Technology, Inc. ("Highpoint") of the Tax Court's denial of its Motion to Restrain Collection of the gross valuation-misstatement penalty, I.R.C. § 6662(h)(1), which was determined to be applicable during relevant partnership proceedings.[1]  The issue in this case is whether, under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"),[2] a Tax Court presiding over partner-level deficiency proceedings has jurisdiction over a gross valuation-misstatement penalty previously determined to be applicable at the partnership level where the partnership was determined to be a "sham" and "lacking economic substance."  The Internal Revenue Code, as in effect during the relevant time, applicable regulations, and Supreme Court precedent make clear that the valuation-misstatement penalty at issue here relates to an adjustment to a

---

[1] Although the Tax Court's order did not resolve all pending claims, we have appellate jurisdiction over this interlocutory appeal pursuant to I.R.C. § 7482(a)(3), authorizing an immediate appeal of "[a]n order of the Tax Court which is entered under authority of I.R.C. § 6213(a) and which resolves a proceeding to restrain assessment or collection."  Section 6213(a) authorizes the Tax Court to enjoin any premature assessment or collection and is treated as a decision of the Tax Court "subject to the same review by the United States Court of Appeals as a similar order of a district court."  § 7482(a)(3).

[2] This case focuses on the 1997 amendments to TEFRA. Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238(a), 111 Stat. 788, 1026–27.  The TEFRA partnership procedures applicable in this case were prospectively repealed by the Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101(a), 129 Stat. 584, 625, effective for taxable years beginning on or after January 1, 2018.  Unless otherwise indicated, all United States Code and Treasury Regulations cited in this opinion refer to those in effect at the time in question, namely the time of Highpoint filing its return.

We recognize that our decision in this case will have little impact with respect to taxable years beginning on or after January 1, 2018.  However, the instant dispute suggests that our decision may well be relevant for several years until disputes with respect to taxable years beginning before January 1, 2018 have all been resolved.

partnership item and, consequently, is explicitly excluded from the Tax Court's deficiency jurisdiction. We hold that a Tax Court presiding over partner-level deficiency proceedings does not have jurisdiction over gross valuation-misstatement penalties imposed against a partnership previously determined to be a "sham" and "lacking economic substance." We accordingly affirm the Tax Court's order denying taxpayer's Motion to Restrain Collection to the extent it related to the gross valuation-misstatement penalty.

## I. BACKGROUND

### A. Factual Background

This case involves a tax shelter known as "Son-of-BOSS." "Like many of its kin, this tax shelter employs a series of transactions to create artificial financial losses that are used to offset real financial gains, thereby reducing tax liability." Petaluma FX Partners, LLC v. Comm'r, 591 F.3d 649, 650 (D.C. Cir. 2010), abrogated on other grounds by United States v. Woods, 571 U.S. 31, 134 S. Ct. 557 (2013).

> There are a number of different types of Son-of-BOSS transactions, but what they all have in common is the transfer of assets encumbered by significant liabilities to a partnership, with the goal of increasing basis in that partnership. The liabilities are usually obligations to buy securities, and typically are not completely fixed at the time of transfer. This may let the partnership treat the liabilities as uncertain, which may let the partnership ignore them in computing basis. If so, the result is that the partners will have a basis in the partnership so great as to provide for large—but not out-of-pocket—losses on their

3

> individual tax returns. Enormous losses are attractive to a select group of taxpayers—those with enormous gains.

Kligfeld Holdings v. Comm'r, 128 T.C. 192, 194 (2007); see also I.R.S. Notice 2000–44, 2000–2 C.B. 255.

In 1999, Highpoint joined Arbitrage Trading, LLC ("Arbitrage") as a partner. In exchange for a membership interest in Arbitrage, Highpoint contributed $62,500 in cash and a pair of Euro options that it had purchased from AIG International, Inc. By disregarding the potential obligations under the Euro options as a potential liability, Highpoint reported its outside basis as $13,295,980. A few months after entering the partnership, Highpoint withdrew in exchange for a liquidated distribution of the Euros. It then sold the Euros and reported a related capital loss of $13,111,783 on its 1999 federal income tax return.

## B.   Procedural Background

Before outlining the legal proceedings that ensued after Highpoint filed its 1999 income tax return reflecting artificial losses generated by its participation in this tax shelter, we first pause to outline the statutory framework governing taxation of partnerships at the time in question. After this overview, we outline the partnership-level proceedings concerning Arbitrage and the partner-level proceedings concerning Highpoint that have spanned the twenty years or so since Highpoint filed its income tax return reporting the losses at issue, which ultimately resulted in this appeal.

4

### 1. *Overview of statutory scheme*

"A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners." United States v. Woods, 571 U.S. 31, 38, 134 S. Ct. 557, 562 (2013) (citing I.R.C. § 701).  Partnerships file informational returns, § 6031(a), and individual partners report their shares of the partnership's income or losses on their respective income tax returns, § 702.  Prior to TEFRA

> the IRS had no way of correcting errors on a partnership's return in a single, unified proceeding.  Instead, tax matters pertaining to all the members of a partnership were dealt with just like tax matters pertaining only to a single taxpayer: through deficiency proceedings at the individual-taxpayer level.  See generally §§ 6211–6216 (2006 ed. and Supp. V).  Deficiency proceedings require the IRS to issue a separate notice of deficiency to each taxpayer, § 6212(a) (2006 ed.), who can file a petition in the Tax Court disputing the alleged deficiency before paying it, § 6213(a).  Having to use deficiency proceedings for partnership-related tax matters led to duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership.  Congress addressed those difficulties by enacting [TEFRA].  96 Stat. 648 (codified as amended at 26 U.S.C. §§ 6221–6232 (2006 ed. and Supp. V)).

Woods, 571 U.S. at 38, 134 S. Ct. at 562–63.  TEFRA created a two-step process for addressing partnership-related tax matters:

> First, the IRS must initiate proceedings at the partnership level to adjust "partnership items," those relevant to the partnership as a whole. §§ 6221, 6231(a)(3).  It must issue [a Final Partnership Administrative Adjustment] notifying the partners of any adjustments to partnership items, § 6223(a)(2), and the partners may seek judicial review of those adjustments, § 6226(a)–(b).  Once the adjustments to partnership items have become final, the IRS may undertake further

5

> proceedings at the partner level to make any resulting "computational adjustments" in the tax liability of the individual partners. § 6231(a)(6). Most computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund actions. § 6230(a)(1), (c). Deficiency proceedings are still required, however, for certain computational adjustments that are attributable to "affected items," that is, items that are affected by (but are not themselves) partnership items. §§ 6230(a)(2)(A) (i), 6231(a)(5).

Id. at 39, 134 S. Ct. at 563. With this framework in mind, we next outline the partnership-level proceedings concerning Arbitrage.

### 2. Partnership-level proceedings

In October 2005, the IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Arbitrage, proposing adjustments to partnership items for the 1999 tax year. The FPAA reported that the IRS had determined that Arbitrage "was formed and availed of solely for the purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners." The IRS had determined that Arbitrage "was a sham" and "lacked economic substance." Accordingly, the IRS had determined that (a) Arbitrage would be disregarded and all transactions engaged in by the purported partnership would be treated as engaged in directly by its purported partners; (b) the foreign currency options would be treated as if never contributed to Arbitrage; (c) the purported partners would not be treated as partners of Arbitrage; and (d) contributions to Arbitrage would be adjusted to reflect the partnership's or

6

purported partner's income.  Purported partners were determined to have "not established adjusted bases in their respective partnership interests in an amount greater than zero."  The IRS further determined, among other things, that "a 40 percent penalty shall be imposed on the portion of any underpayment attributable to the gross valuation misstatement."

I.R.C. § 6662(a) imposes a 20% accuracy-related penalty to the portion of underpaid tax attributable to, among other things, negligence, any substantial understatement of income tax, or any substantial valuation misstatement. § 6662(a), (b)(1)–(3).  The penalty increases to 40% if there is a gross valuation misstatement.  § 6662(h)(1).  "A gross valuation misstatement exists if 'the value of any property (or the adjusted basis of any property) claimed on any return of tax . . . is [400] percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be).'"  Gustashaw v. C.I.R., 696 F.3d 1124, 1135 (11th Cir. 2012) (citing § 6662(e)(1)(A), (h)(2)(A)(i)).  A treasury regulation relatedly provides:

> The value or adjusted basis claimed on a return of any property with a correct value or adjusted basis of zero is considered to be 400 percent or more of the correct amount. There is a gross valuation misstatement with respect to such property, therefore, and the applicable penalty rate is 40 percent.

26 C.F.R. § 1.6662-5(g); see also Gustashaw, 696 F.3d at 1135.

7

In March 2006, Arbitrage sought judicial review of the FPAA pursuant to § 6226(a).  In October 2014, the Court of Federal Claims issued an amended judgment sustaining all adjustments of partnership items contained in the FPAA and stating that the explanations offered in the FPAA are "conceded to be correct." It sustained all penalties contained in the FPAA but noted that "partners of Arbitrage, LLC reserve their right to pursue partner-level defenses to these penalties."  This concluded the partnership-level proceedings involving Arbitrage. We next outline the partner-level proceedings initiated by Highpoint as well as other interactions between the parties during that timeframe.

### 3. *Partner-level proceedings*

In November 2015, the IRS issued a Notice of Deficiency to Highpoint. This notice reflected a deficiency of $5,222,675, based upon the following adjustments: (1) a $13,191,937 increase in capital gains income representing the disallowed short-term capital loss for the sale of the Euro option distributed from Arbitrage when Highpoint left the partnership, (2) a disallowance of $1,573,727 in claimed professional fee deductions relating to these transactions, and (3) an increase of $72,053 in "other income" representing a disallowed loss from the partnership. The notice also reflected a 40% gross valuation-misstatement penalty

pursuant to I.R.C. § 6662(h) amounting to $2,089,070.  Highpoint filed a petition in the Tax Court for redetermination of its deficiency in February 2016.[3]

A few days later, the IRS issued a Notice of Tax Due reflecting the same amount contained in the Notice of Deficiency as well as $12,755,355.16 in interest, resulting in a total of $20,067,100.16 due.  In June 2016, the IRS notified Highpoint that it intended to levy Highpoint's property and apply the proceeds to the $20,067,100.16 owed.  A few days after that, Highpoint filed a Motion to Restrain Collection in the United States Tax Court.  In July 2016, the IRS objected to Highpoint's Motion to Restrain Collection.  The IRS asserted that, while the Tax Court had jurisdiction over adjustments relating to capital gains income and the professional fee deductions, it did not have jurisdiction over the valuation-misstatement penalty and the adjustment to "other income."  In September 2016, the IRS moved to dismiss the portions of the case before the Tax Court relating to the adjustment to other income and the valuation-misstatement penalty, asserting that neither were subject to deficiency proceedings under I.R.C. § 6230(a).

On July 17, 2017, the Tax Court ordered further briefing on the adjustment to other income issue and denied Highpoint's Motion to Restrain Collection to the

---

[3] Highpoint's Notice of Appeal only seeks review of the Tax Court's July 17, 2017 order denying Highpoint's Motion to Restrain to the extent that it related to the valuation-misstatement penalty.  Because Highpoint's petition for redetermination of its deficiency is not at issue in this appeal, we do not discuss it further.

extent that it related to the penalty.  As to the valuation-misstatement penalty, the

Tax Court stated:

> In United States v. Woods, 134 S. Ct. 557, 565–566 (2013), the
> Supreme Court stated that where the partnership is a sham, no partner-
> level determinations are needed to determine outside basis because
> "once the partnerships were deemed not to exist for tax purposes, no
> partner could legitimately claim an outside basis greater than zero."
> See also Greenwald v. Commissioner, 142 T.C. 308, 315 (2014).  It is
> not possible for petitioner to have an outside basis greater than zero in
> Arbitrage, a partnership that does not exist for tax purposes.  The final
> decision in the partnership-level proceeding applied the section 6662
> penalty. It is well settled that the penalty may be directly assessed as a
> computational adjustment that we lack jurisdiction over,
> notwithstanding the need for partner-level determinations.  See sec.
> 6230(a)(2), (c)(4); Woods, 571 S. Ct. at 565, n.2; Thompson v.
> Commissioner, T.C. Memo. 2014–154 at *8; Logan Tr., 616 Fed.
> Appx. 426 (D.C. Cir. 2015).

In August 2017, Highpoint filed a Motion for Reconsideration of the Tax

Court's July 17 order.  In support of its motion, Highpoint asserted that:

> In the July 17 Order, the Court denied Petitioner's Motion to Restrain
> Assessment with respect to the gross valuation misstatement penalty.
> To assert the gross valuation misstatement penalty, the Code requires
> a comparison of the correct value versus the reported value of the
> adjusted basis of the Euros that Highpoint sold in 1999.  A
> determination of the correct value, which Respondent admits must be
> determined in a deficiency proceeding, cannot be completed without
> the Court first completing partner-level factual determinations.

In November 2017, the Tax Court denied Highpoint's Motion for Reconsideration

and granted the IRS's motion to dismiss in full.[4]  As to the valuation-misstatement

---

[4] The Tax Court held that it lacked jurisdiction not only over the valuation-misstatement penalty but also over the "other income."  However, on appeal, Highpoint challenges the Tax

penalty, the Tax Court determined that Highpoint had not established that

reconsideration should be granted and further noted that:

> Deficiency proceedings do not apply to the assessment of penalties determined to be applicable at the partnership level, regardless of whether partner level determinations are required to assess the penalty.  I.R.C. sec. 6230(a)(2)(A)(i); sec. 301.6231(a)(6)-1, Proced. & Admin. Regs.  In the Amended Judgment relating to prior partnership proceeding (Arbitrage Trading, LLC v. United States, docket No. 06-202T), partnership items, including the application of the penalty, were conclusively determined.  See I.R.C. secs. 6221 and 6320(c)(4).  As such, this Court lacks jurisdiction over the penalty, and we stand by our decision.

Highpoint now appeals the Tax Court's July 17 order denying its Motion to

Restrain Collection to the extent that it found it had no jurisdiction over the gross

valuation-misstatement penalty.

## II.  ISSUE

The sole issue in this appeal is whether the Tax Court erred in denying

Highpoint's Motion to Restrain Collection of the gross valuation-misstatement

penalty, and in holding that it lacked deficiency jurisdiction over the penalty.

## III.  STANDARD OF REVIEW

We review the Tax Court's legal conclusions de novo, and its factual

findings for clear error.  See Campbell v. Comm'r, 658 F.3d 1255, 1258 (11th Cir.

---

Court's ruling only with respect to the valuation-misstatement penalty.  Accordingly, this opinion considers only the issue of whether the Tax Court had jurisdiction over the valuation-misstatement penalty.

2011).  "[W]e review questions of subject matter jurisdiction and statutory interpretation de novo."  Lindley v. F.D.I.C., 733 F.3d 1043, 1050 (11th Cir. 2013).

## IV.  DISCUSSION

Highpoint's primary argument on appeal is that, because the valuation-misstatement penalty is an "affected item[] which require[s] partner level determinations," it is necessarily subject to deficiency jurisdiction.  Highpoint contends that, because the penalty at issue is an "affected item[] which require[s] partner level determinations," it cannot also be a "penalt[y] . . . that relate[s] to adjustments to partnership items."  See I.R.C. § 6230(a)(2)(A)(i).  For the reasons that follow, we conclude that the relevant statutory text, applicable regulations, and Supreme Court precedent make clear that Highpoint's arguments are without merit, and that the Tax Court correctly held that it did not have deficiency jurisdiction over the penalty.  We begin our analysis by focusing on the statutory provision that specifically addresses which partnership-related matters are subject to Tax Court deficiency jurisdiction—and which are not.  See I.R.C. § 6230(a).

A.  Statutory Deficiency Jurisdiction

*1.  I.R.C. § 6230(a)(1)*

Internal Revenue Code Chapter 63, subchapter B provides for Tax Court deficiency proceedings.  See I.R.C. §§ 6211–6216 (entitled "Deficiency

12

Procedures in the Case of Income, Estate, Gift, and Certain Excise Taxes"). When the IRS issues a notice of deficiency, notifying a taxpayer that the IRS has determined that additional taxes are due, a taxpayer ordinarily has an option to pay the additional taxes and file a claim for refund, or to challenge the IRS determination without prepayment by filing a petition to the Tax Court seeking a redetermination of the deficiency pursuant to the Tax Court's deficiency jurisdiction. See 13 Mertens Law of Federal Income Taxation § 49C:1 (2019) ("Upon receipt of a notice of deficiency, a taxpayer may either file a petition with the Tax Court to contest the amount of the deficiency or pay the amount of the deficiency and sue for a refund in either the Claims Court or the appropriate District Court."). However, that general provision is modified by I.R.C. § 6230(a), which specifically addresses the partnership-related issues before us and specifically provides that some partnership-related matters are within the Tax Court's deficiency jurisdiction, and some are not. We begin with § 6230(a)(1), which provides:

> Except as provided in paragraph (2) or (3), subchapter B of this chapter shall not apply to the assessment or collection of any computational adjustment.

From § 6230(a)(1) alone we know that Tax Court deficiency proceedings (i.e., subchapter B) will not apply to—or in other words, the Tax Court will not have deficiency jurisdiction over—assessment or collection of any computational

13

adjustments other than those provided for in paragraphs two or three of § 6230(a)(1). We must therefore determine whether the penalty at issue is a computational adjustment, and if so, whether it is otherwise provided for in § 6230(a)(2) or (a)(3).

We pause to define statutory terms necessary to understand § 6230(a)(1). "Computational adjustment" is defined as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item. All adjustments required to apply the results of a proceeding with respect to a partnership under this subchapter to an indirect partner shall be treated as computational adjustments." I.R.C. § 6231(a)(6). In turn, a "partnership item" is defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." § 6231(a)(3).

Considering these definitions in conjunction with the text of § 6230(a)(1), we know that if a change in tax liability of a partner reflects treatment of a partnership item (an item required to be taken into account for the partnership's taxable year and more appropriately determined at the partnership level), then deficiency proceedings will not apply to the assessment of that adjustment unless

14

otherwise provided for in § 6230(a)(2) or (a)(3).  Treasury regulations in effect at the time in question state that "[a]ny penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item, shall be determined at the partnership level."  Treas. Reg. § 301.6221-1T(c).  The FPAA issued by the IRS to Arbitrage stated that the valuation-misstatement penalty at issue relates to adjustments to partnership items.  It provided in pertinent part that "at a minimum, the accuracy-related penalty under Section 6662(a) of the Internal Revenue Code applies to all underpayments of tax attributable to adjustments of partnership items of Arbitrage Trading, LLC."

We agree with the IRS's characterization of the penalty at issue as relating to an adjustment to a partnership item.  Treasury Regulation § 301.6231(a)(3)-1(b) includes within its "partnership item" definition "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)-1(b) (emphasis added).  The underlying legal determination that a partnership is a sham lacking economic substance—which caused the penalty to be applied in this case—falls within this "partnership item" definition.  See id. (listing as examples of such legal and factual determinations deemed "partnership items," among other things, "whether partnership activities have been engaged in with the intent to make a profit"); accord RJT Invs. X v. Comm'r, 491 F.3d 732, 737–38

15

(8th Cir. 2007) (holding that the determination that a partnership is a sham is a "legal determination" that "falls squarely within" the definition of a partnership item pursuant to Treas. Reg. § 301.6231(a)(3)-1(b)).  Indeed, as demonstrated in Part IV.B. below, the Supreme Court made clear in United States v. Woods that a gross valuation-misstatement penalty—just like the one at issue in this case—relates to a determination that the underlying partnerships are shams and, in turn, relates to an adjustment to a partnership item. See Woods, 571 U.S. at 39–44, 134 S. Ct. at 563–66.  For a more detailed discussion of Woods, see infra Part IV.B.[5] Accordingly, the penalty in question relates to an adjustment to a partnership item and is therefore a computational adjustment not subject to deficiency jurisdiction under § 6230(a)(1) unless otherwise provided for.

---

[5] Many other courts have treated sham determinations, which can justify imposing a valuation-misstatement penalty, as relating to adjustments to partnership items.  See, e.g., Petaluma FX Partners, LLC v. Comm'r, 792 F.3d 72, 77 (D.C. Cir. 2015) ("[C]ourts retain jurisdiction in partnership-level proceedings to determine whether any partnership-level adjustments—such as the determination in this case that Petaluma was a sham—carry 'the potential to trigger a penalty' against the partners." (quoting Woods, 571 U.S. at 41, 134 S. Ct. at 565)); NPR Invs., L.L.C. ex rel. Roach v. United States, 740 F.3d 998, 1010 (5th Cir. 2014) (holding that the partnership-level court had jurisdiction to adjudicate the applicability of the valuation-misstatement penalties where the partnership was a sham, and stating that "we conclude that the District Court had jurisdiction to determine the applicability of the valuation-misstatement penalty—to determine, that is, whether the partnerships' lack of economic substance (which all agree was properly decided at the partnership level) could justify imposing a valuation-misstatement penalty on the partners." (quoting Woods, 571 U.S. at 42, 137 S. Ct. at 564)); RJT Invs., 491 F.3d at 737–38 (holding that a determination that a partnership is a sham is a partnership item).

The plain text of § 6230(a)(1), when read in conjunction with definitional statutory provisions and applicable regulations, makes clear that unless otherwise provided in § 6230(a)(2) or (a)(3), the Tax Court does not have deficiency jurisdiction over the penalty at issue. Highpoint argues that § 6230(a)(2)(A)(i) nonetheless provides the Tax Court deficiency jurisdiction over the penalty because the penalty is an "affected item[] which require[s] partner level determinations." We address that argument next.[6]

### 2. I.R.C. § 6230(a)(2)(A)(i)

Section 6230(a)(2)(A) provides that:

> Subchapter B shall apply to any deficiency attributable to affected items which require partner level determinations (other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items) . . . .

I.R.C. § 6230(a)(2)(A)(i). From the face of § 6230(a)(2)(A)(i), we know that, even with respect to affected items requiring partner-level determinations, Tax Court deficiency proceedings will not apply to—or in other words, will not have jurisdiction over—"penalties . . . that relate to adjustments to partnership items." Highpoint's argument focuses on the penalty being an "affected item[] which require[s] partner level determinations," but this argument ignores the exclusion within the same sentence. The parenthetical exclusion makes clear that, even if the

---

[6] Highpoint does not argue that other provisions of § 6230(a)(2) or (a)(3) provide the Tax Court with deficiency jurisdiction over the penalty.

deficiency at issue is attributable to an affected item which requires partner-level determinations, deficiency proceedings will not apply to "penalties . . . relat[ing] to adjustments to partnership items." § 6230(a)(2)(A)(i). The issue, again, is whether the penalty at issue "relates to [an] adjustment[] to [a] partnership item."

"Affected item" is defined as "any item to the extent such item is affected by a partnership item," § 6231(a)(5), while "partnership item" is defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level," § 6231(a)(3). As outlined above, Treas. Reg. § 301.6231(a)(3)-1(b) and the Supreme Court's decision in Woods make clear that the penalty in question relates to an adjustment to a partnership item. Accordingly, the penalty is not subject to Tax Court deficiency jurisdiction under § 6230(a)(2)(A)(i).[7]

---

[7] The Tax Court has frequently held that penalties deemed to apply in partnership-level proceedings are not subject to Tax Court deficiency jurisdiction under § 6230(a)(2)(A)(i). See, e.g., Domulewicz v. Comm'r, 129 T.C. 11, 21–23 (2007) ("Under a plain reading of [§ 6230(a)(2)(A)(i)], the effect of the amendment was to remove partnership-item penalties from the deficiency procedures effective for partnership taxable years ending after August 5, 1997."), aff'd in part remanded in part on other grounds Desmet v. Comm'r, 581 F.3d 297 (6th Cir. 2009); Fears v. Comm'r, 129 T.C. 8, 10 (2007); Estate of Simon v. Comm'r, T.C. Memo. 2013-174, 2013 WL 3879804, at *4 (2013); Bedrosian v. Comm'r, T.C. Memo. 2007-376, 2007 WL 4526479, at *3 (2007).

In addition to contradicting the plain language of § 6230(a)(2)(A)(i), Highpoint's argument that the penalty is subject to Tax Court deficiency jurisdiction because it is an "affected item[] which require[s] partner level determinations" is undermined by Treasury Regulations in effect during the time in question.

> Changes in a partner's tax liability with respect to affected items that require partner level determinations . . . are computational adjustments subject to deficiency procedures. Nevertheless, any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item may be directly assessed following a partnership proceeding, based on determinations in that proceeding, regardless of whether partner level determinations are required.

Treas. Reg. § 301.6231(a)(6)-1T(a)(2). This only confirms what is unambiguous from the plain meaning of § 6230(a)(1) and (a)(2)(A)(i)—namely, that penalties relating to adjustments to partnership items are treated differently (i.e., not subject to Tax Court deficiency jurisdiction) even if they are affected items requiring partner level determinations. See also Woods, 571 U.S. at 41, 134 S. Ct. at 564 (holding that "a penalty can relate to a partnership-item adjustment even if the penalty cannot be imposed without additional, partner-level determinations").

Highpoint argues that preventing it from addressing the penalty in Tax Court deficiency proceedings—and forcing it to raise challenges to the penalty in refund

19

or Collection Due Process ("CDP") proceedings instead[8]—is duplicative and

contrary to the congressional intent behind the 1997 amendments to TEFRA that

sought to streamline partnership tax litigation.  "We have . . . said . . . frequently

that '[w]hen the import of words Congress has used is clear . . . we need not resort

to legislative history, and we certainly should not do so to undermine the plain

meaning of the statutory language.'"  CBS Inc. v. PrimeTime 24 Joint Venture,

245 F.3d 1217, 1222 (11th Cir. 2001) (quoting Harris v. Garner, 216 F.3d 970, 976

(11th Cir. 2000) (en banc)).  Because we find that § 6230(a)(1) and (a)(2)(A)(i)

---

[8] Even though Highpoint may not challenge the penalty in the instant partner-level Tax Court deficiency proceedings, it still has the opportunity to raise partner-level defenses regarding the penalty (including the good faith and reasonable cause defenses it alludes to throughout its brief) in refund proceedings. See § 6230(c)(4) ("[T]he partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment.").  Highpoint argues that it would be unfair not to provide Tax Court deficiency jurisdiction over the penalty because that would require Highpoint, and similarly situated taxpayers, to pay large sums of tax liability before challenging the penalty in refund proceedings.  "[E]ven if we agree that the statute allows for harsh or unfair consequences, that does not give us license to ignore the plain meaning of the text. We will look beyond the unambiguous plain meaning of the text only if the plain meaning produces absurd results."  Patel v. U.S. Attorney Gen., 917 F.3d 1319, 1330 (11th Cir. 2019).  We will not ignore the plain meaning of I.R.C. § 6230 in this case.

Moreover, there is an opportunity for Highpoint to challenge the penalty other than through refund proceedings and prior to payment—i.e., in a prepayment proceeding other than refund proceedings.  Highpoint can challenge the penalty in a prepayment Collection Due Process ("CDP") hearing as provided for by § 6330(a)(1), which states "[n]o levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made."  At this hearing, Highpoint may raise "challenges to the underlying tax liability for any tax period if the person . . . did not otherwise have an opportunity to dispute such tax liability."  § 6330(c)(2)(B).

clearly exclude the penalty at issue from Tax Court deficiency jurisdiction, we need not entertain Highpoint's legislative intent arguments.[9]

We conclude that the Internal Revenue Code unambiguously excludes from the Tax Court's deficiency jurisdiction Highpoint's challenge to the penalty at issue. Nevertheless, Highpoint relies on United States v. Woods to argue that the Tax Court has jurisdiction over the penalty. Quite contrary to Highpoint's argument, however, Woods only provides further and significant support for what

---

[9] Highpoint also argues that "imposing the 40 percent basis penalty before determining the basis or the resulting deficiency works an algebraic absurdity" because it is impossible to calculate the penalty without first determining the basis and deficiency in partner-level deficiency proceedings. We are not convinced that holding that there is no Tax Court deficiency jurisdiction over the penalty produces such absurd results as to justify ignoring the unambiguous plain meaning of § 6230. See Patel, 917 F.3d at 1330. The Supreme Court in Woods noted that the district court presiding over partnership-level proceedings "was not required to shut its eyes to the legal impossibility of any partner's possessing an outside basis greater than zero in a partnership that, for tax purposes, did not exist." Woods, 571 U.S. at 42, 134 S. Ct. at 565. The Woods Court also noted in dicta that "it is not readily apparent why additional partner-level determinations would be required before adjusting outside basis in a sham partnership." Id. at 42 n.2, 134 S. Ct. at 565 n.2 (citing Petaluma, 591 F.3d at 655 ("If disregarding a partnership leads ineluctably to the conclusion that its partners have no outside basis, that should be just as obvious in partner-level proceedings as it is in partnership-level proceedings")).

We acknowledge the problem to which Highpoint points. The applicability of the 40% penalty has been determined during partnership-level proceedings. However, that 40% penalty is to be applied to the appropriate portion of the deficiency which Highpoint is ultimately determined to owe. That deficiency amount would ordinarily be determined in Tax Court deficiency proceedings. It might well have been preferable, in an ideal world, had Congress permitted the precise amount of the penalty to be determined also in the same deficiency proceedings. However, Congress clearly did not permit that. But, there are at least two other partner-level proceedings available in which the appropriate deficiency and precise amount of the penalty can be determined—CDP proceedings or refund proceedings. In any event, the problem about which Highpoint complains falls far short of the kind of absurdity that might warrant assuming that Congress intended the opposite of which it plainly stated.

21

the Internal Revenue Code makes unambiguous—that the Tax Court does not have deficiency jurisdiction over the penalty.

    B.  *United States v. Woods*

    The Supreme Court, in United States v. Woods, addressed a related but distinct question of whether "the penalty for tax underpayments attributable to valuation misstatements, 26 U.S.C. § 6662(b)(3), is applicable to an underpayment resulting from a basis-inflating transaction subsequently disregarded for lack of economic substance."  Woods, 571 U.S. at 33, 134 S. Ct. at 560.  Woods arose from partnership-level proceedings considering an appeal of an FPAA.  Id. at 37, 134 S. Ct. at 562.  The respondent taxpayer in Woods participated in a Current Options Bring Reward Alternatives ("COBRA") tax shelter.  Id. at 34, 134 S. Ct. at 560.  This tax shelter used offsetting options to give respondent taxpayer an artificially high basis in partnership interests so that he could claim significant losses on paper, thereby reducing taxable income.  Id. at 33–35, 134 S. Ct. at 560–61.  The IRS did not treat these COBRA-generated losses as valid and issued an FPAA stating that the partnerships lacked economic substance, the partnerships would be disregarded for tax purposes, and the losses would be disallowed.  Id. at 36–37, 134 S. Ct. at 561–62.  Having determined that there was no partnership for tax purposes, the IRS also concluded that the partners had "not established adjusted bases in their respective partnership interests in an amount greater than zero" and

22

that any underpayment of tax would be subject to the 40% gross valuation-misstatement penalty—the exact same penalty at issue in this case. Id. at 37, 134 S. Ct. at 562.

Pursuant to § 6226(a)(2), respondent (the tax matters partner for the partnerships) appealed the FPAA's determination that the 40% penalty was applicable when the underlying transaction is disregarded for lack of economic substance. Id. Both the district court and the court of appeals held that, although the partnerships were shams, the valuation-misstatement penalty did not apply. Id. The Supreme Court, in addition to considering this question, also ordered briefing on whether the district court presiding over the partnership-level proceedings had "jurisdiction to consider the valuation-misstatement penalty." Id. at 37–38, 134 S. Ct. at 562. The jurisdictional question before the Court in Woods is distinct from the one currently before us because it considered whether the district court had partnership-level jurisdiction over a valuation-misstatement penalty, whereas we are asked to determine whether the Tax Court had partner-level deficiency jurisdiction over a valuation-misstatement penalty. Despite the different procedural postures, Woods's discussion of the same penalty at issue in this case is instructive.

Under TEFRA, a court presiding over a partnership-level proceeding has jurisdiction to determine both partnership items and "the applicability of any

23

penalty . . . which relates to an adjustment to a partnership item." § 6226(f). We take note that the phrase "penalty . . . which relates to an adjustment to a partnership item" that appears in § 6226(f) is nearly identical to the phrase "penalties . . . that relate to adjustments to partnership items" in § 6230(a)(2)(A)(i), which is at issue in this case. The Woods Court framed the jurisdictional issue before it as follows:

> As both sides agree, a determination that a partnership lacks economic substance is an adjustment to a partnership item. Thus, the jurisdictional question here boils down to whether the valuation-misstatement penalty "relates to" the determination that the partnerships Woods and McCombs created were shams.

Woods, 571 U.S. at 39, 134 S. Ct. at 563. The Government argued that the valuation-misstatement penalty "logically and inevitably" flowed from the economic-substance (or sham) determination. See id. at 39–40, 134 S. Ct. at 563. Because there can be no outside basis in a sham partnership, the Government contended, any partner who reports an outside basis greater than zero commits a valuation misstatement. See id. The respondent taxpayer argued that, because outside basis is an affected item and not a partnership item, a penalty resting on a misstatement of an outside basis could not be considered at the partnership level. See id. at 40, 134 S. Ct. at 563. The Court summarized his argument as follows: "He maintains, in short, that a penalty does not relate to a partnership-item adjustment if it 'requires a partner-level determination,' regardless of 'whether or

24

not the penalty has a connection to a partnership item.'"  Id.  This argument made

by the taxpayer in Woods is nearly identical to the one Highpoint advances before

this Court—i.e., that because the penalty at issue is an affected item requiring

partner-level determinations, it cannot also relate to adjustments to partnership

items.

> The Court rejected the taxpayer's arguments, and held that

> TEFRA gives courts in partnership-level proceedings jurisdiction to
> determine the applicability of any penalty that could result from an
> adjustment to a partnership item, even if imposing the penalty would
> also require determining affected or non-partnership items such as
> outside basis.

Id. at 41, 134 S. Ct. at 564.  The Court explained that even though every penalty

must be imposed after partner-level determinations are made at the partner level,

"TEFRA provides that the applicability of some penalties must be determined at

the partnership level.  The applicability determination is therefore inherently

provisional; it is always contingent upon determinations that the court in a

partnership-level proceeding does not have jurisdiction to make."[10]  Id. at 41, 134

---

[10] Highpoint focuses on this passage from Woods in arguing that imposing the penalty is merely provisional at the partnership stage and that the penalty can actually be imposed only after determining the outside basis and deficiency in partner-level proceedings.  By stating that the partnership-level determination that a penalty is "provisional," however, the Woods Court was indicating that the district court did not have jurisdiction to consider partner-level defenses in a partnership-level proceeding.  The Court did not state that the "provisional" nature of this penalty at the partnership level indicated that partner-level Tax Court deficiency proceedings would have jurisdiction.  In other words, the Court's suggestion that the penalty would have to be actually imposed in partner-level proceedings did not indicate that the appropriate partner-level forum would be Tax Court deficiency proceedings.  There are at least two other partner-

S. Ct. at 564.  The Court in <u>Woods</u> explained that several provisions of TEFRA make clear that courts presiding over partnership-level proceedings have jurisdiction to consider the applicability of some penalties that cannot be imposed without partner-level inquiries.  <u>Id.</u>

> One requires the IRS to use deficiency proceedings for computational adjustments that rest on "affected items which require partner level determinations (other than penalties . . . that relate to adjustments to partnership items)."  § 6230(a)(2)(A)(i).  Another states that while a partnership-level determination "concerning the applicability of any penalty . . . which relates to an adjustment to a partnership item" is "conclusive" in a subsequent refund action, that does not prevent the partner from "assert[ing] any partner level defenses that may apply."  § 6230(c)(4).  Both these provisions assume that a penalty can relate to a partnership-item adjustment even if the penalty cannot be imposed without additional, partner-level determinations.

<u>Id.</u>  In other words, the Court made clear that penalties relating to partnership-item adjustments and penalties that cannot be actually imposed without additional, partner-level determinations are not mutually exclusive.  <u>See</u> <u>id.</u>

In sum, the Court in <u>Woods</u> rejected the argument of the taxpayer Woods— i.e., "that a penalty does not relate to a partnership-item adjustment if it requires a partner-level determination."  <u>Id.</u> at 40, 134 S. Ct. at 563 (internal quotation marks omitted).  The Court held that the gross valuation-misstatement penalty at issue

---

level proceedings—refund proceedings and CDP proceedings.  Indeed, previously in the opinion, the <u>Woods</u> Court indicated that "[m]ost computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund actions."  <u>Woods</u>, 571 U.S. at 39, 134 S. Ct. at 563 (citing § 6230(a)(1), (c)).

there related to the determination that the partnerships were a sham, which

determination was an adjustment to a partnership item.  Id. at 39–42, 134 S. Ct. at

563–64.  Thus, the Court held that, under § 6226(f), the partnership-level court at

issue there had jurisdiction over the gross valuation-misstatement penalty because

the penalty related to an adjustment to a partnership item.  Id.  The Court's

reasoning proceeded as follows.  The Court first set out the issue before it:

> Under the TEFRA framework, a court in a partnership-level
> proceeding like this one has jurisdiction to determine not just
> partnership items, but also "the applicability of any penalty . . . which
> relates to an adjustment to a partnership item."  § 6226(f).  As both
> sides agree, a determination that a partnership lacks economic
> substance is an adjustment to a partnership item.  Thus, the
> jurisdictional question here boils down to whether the valuation-
> misstatement penalty "relates to" the determination that the
> partnerships . . .  created were shams.

Id. at 39, 134 S. Ct. at 563.  The Court then set out the Government's position:

> In the Government's view, there can be no outside basis in a sham
> partnership . . . , so any partner who underpaid his individual taxes by
> declaring an outside basis greater than zero committed a valuation
> misstatement.  In other words, the penalty flows logically and
> inevitably from the economic-substance determination.

Id. at 39–40, 134 S. Ct. at 563.  The Court next set out the argument of taxpayer

Woods:

> He maintains, in short, that a penalty does not relate to a partnership-
> item adjustment if it requires a partner-level determination, regardless
> of whether or not the penalty has a connection to a partnership item.

27

Id. at 40, 134 S. Ct. at 563 (internal quotation marks omitted).  The Court then

noted that several provisions in the Internal Revenue Code, including

§ 6230(a)(2)(A)(i) and § 6230(c)(4), indicate that:

> A penalty can relate to a partnership-item adjustment even if the
> penalty cannot be imposed without additional partner-level
> determinations.

Id. at 41, 134 S. Ct. at 564.  The Court then rejected the argument of taxpayer

Woods, and held:

> that TEFRA gives courts in partnership-level proceedings jurisdiction
> to determine the applicability of any penalty that could result from an
> adjustment to a partnership item, even if imposing the penalty would
> also require determining affected or non-partnership items such as
> outside basis. . . .
>       Applying the foregoing principles to this case, we conclude that
> the District Court had jurisdiction to determine the applicability of the
> valuation-misstatement penalty—to determine, that is, whether the
> partnerships' lack of economic substance (which all agree was
> properly decided at the partnership level) could justify imposing a
> valuation-misstatement penalty on the partners.

Id. at 41–42, 134 S. Ct. at 564.

Woods strongly supports what we already determined to be unambiguous

from the relevant Internal Revenue Code provisions.  The valuation-misstatement

penalty at issue can be an affected item requiring partner-level determinations

while also relating to adjustments to partnership items.  Woods directly rejects

Highpoint's argument that these categories are mutually exclusive.  Woods leaves

no doubt that the valuation-misstatement penalty at issue is related to an

28

adjustment to a partnership item so as to clearly fall within § 6230(a)(2)(A)(i)'s exclusion of such items from deficiency jurisdiction.

## V.  CONCLUSION

For the foregoing reasons, we conclude that the relevant statutory provisions, applicable regulations, and precedent—including in particular the Supreme Court decision in Woods—indicate clearly that the valuation-misstatement penalty at issue, which was triggered by the partnership-level determination that Arbitrage lacked economic substance, relates to an adjustment to a partnership item, and thus is excluded from the Tax Court's deficiency jurisdiction under § 6230(a)(2)(A)(i).  We hold that the Tax Court presiding over partner-level deficiency proceedings did not have jurisdiction over the valuation-misstatement penalty at issue.[11]  The Tax Court's order denying Highpoint's Motion to Restrain Collection to the extent it related to the valuation-misstatement penalty is therefore

AFFIRMED.

---

[11] Other arguments raised by Highpoint on appeal need not be addressed in light of our jurisdictional holding.