[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12303

_____

RAGHUNATHAN SARMA & GAILE SARMA,

Petitioners-Appellants,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 26318-16

_____

Before NEWSOM, MARCUS, Circuit Judges, and MIDDLEBROOKS,[*] District Judge.

MIDDLEBROOKS, District Judge:

This appeal involves the tax consequences of Raghunathan Sarma's participation in a complex tax avoidance scheme. In 2001, Sarma expected to realize an $80.9 million capital gain as a result of selling a portion of his company. The scheme, which involved a set of tiered partnerships, allowed Sarma to claim a $77.6 million artificial loss to offset his legitimate capital gains. A federal District Court found the scheme to be an abusive tax shelter and upheld the IRS's disallowance of the benefits of the shelter in a partnership-level proceeding, and a prior panel of this Court affirmed. *Kearney Partners Fund LLC v. United States*, 803 F.3d 1280 (11th Cir. 2015) (per curiam).

As a result of the partnership-level proceeding, the IRS issued a notice of deficiency to Petitioners disallowing the $77.6 million loss deduction they reported on their joint tax return. Petitioners sought review in the U.S. Tax Court, which rejected their various challenges. After careful review and with the benefit of oral argument, we affirm.

## I

### A

Partnerships are not taxpayers; taxable income and losses of a partnership are passed through to its partners. 26 U.S.C. § 701. Partnerships do, however, file annual information returns

---

[*] Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of Florida, sitting by designation.

reporting their tax items, such as gains, losses, deductions and credits. *Id.* § 6031(a). Partners are responsible for reporting their distributive share of the partnership's tax items on their individual federal income tax returns. *Id.* §§ 702, 704.

The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), the governing scheme in effect during the relevant period, established uniform audit and litigation procedures for the resolution of partnership tax items. Pub. L. No. 97-248, 96 Stat. 648.[1] Prior to TEFRA, the IRS could not audit items that were attributable to the partnership in a single unified proceeding. *United States v. Woods*, 571 U.S. 31, 38 (2013). Instead, the IRS had to adjust partnership-level items individually with each partner through the normal deficiency proceedings. *Id.* (citing 26 U.S.C. §§ 6211–6216 (2006 ed. and Supp. V)). This led to duplicative proceedings involving the same tax items and inconsistent results among partners of a given partnership. *Id.* By enacting TEFRA, Congress sought to alleviate those problems. *Id.*

TEFRA provides a two-step process for resolving partnership tax matters. First, "partnership item[s]" are adjusted "at the partnership level" in a single partnership-level proceeding. 26 U.S.C. § 6221(a), 6231(a)(3). A "partnership item" is "any item required to be taken into account for the partnership's taxable year" if "such item is more appropriately determined at the partnership level than at the partner level." *Id.* § 6231(a)(3).

---

[1] The Bipartisan Budget Act of 2015 repealed TEFRA partnership procedures for taxable years beginning on or after January 1, 2018. *Greenberg v. Comm'r*, 10 F.4th 1136, 1144 n.1 (11th Cir. 2021) (citing Pub. L. No. 114-74, § 1101(a), 129 Stat. 584, 625). All citations to the Internal Revenue Code and Treasury Regulations herein reflect the provisions in effect during the relevant period.

Conversely, a "nonpartnership item" is "an item which is (or is treated as) not a partnership item." *Id.* § 6231(a)(4). To challenge a partnership item, the IRS initiates an administrative proceeding against the partnership. *Id.* § 6223(a)(1). The IRS then issues a notice of final partnership administrative adjustment ("FPAA") to the partners informing them of the adjustments to partnership items. *Id.* § 6223(a)(2). Partners can seek judicial review of the adjustments to partnership items in a partnership-level proceeding. *Id.* § 6226(a), (b)(1).

Then, once partnership-level adjustments are final, the IRS determines whether the partnership-level adjustments necessitate any partner-level changes, including to "affected items." *Id.* §§ 6225, 6231(a)(5). An "affected item" is "any item to the extent such item is affected by a partnership item." *Id.* § 6231(a)(5). If an adjustment is merely computational and does not require partner-level factual determinations, the IRS may directly assess the computational adjustment without issuing a notice of deficiency, *i.e.*, there is no prepayment right to judicial review. *See id.* §§ 6230(a)(1), (c), 6231(a)(6); Treas. Reg. § 301.6231(a)(6)-1(a)(2). If an adjustment attributable to an affected item requires partner-level determinations, the IRS must issue an affected item notice of deficiency to the partner and the normal deficiency procedures apply, *i.e.*, there is a prepayment right to judicial review. 26 U.S.C. § 6230(a)(2)(A)(i); Treas. Reg. § 301.6231(a)(6)-1(a)(3).

Any partnership that filed partnership return during the relevant time period was subject to TEFRA, unless it qualified as a "small partnership." 26 U.S.C. § 6231(a)(1)(A), (B)(i). A small partnership is a "partnership having 10 or fewer partners each of whom is an individual . . . , a C corporation, or an estate of a deceased partner." *Id.* § 6231(a)(1)(B)(i). A partnership cannot be a

small partnership if any partner is a "pass-thru partner," Treas Reg. § 301.6231(a)(1)-1(a)(2), which is an entity through which "other persons hold an interest," 26 U.S.C. § 6231(a)(9). The determination that a partnership is a small partnership is made "with respect to each partnership taxable year." Treas. Reg. § 301.6231(a)(1)-1(a)(3). Small partnerships are exempt from the definition of "partnership." 26 U.S.C. § 6231(a)(1)(B)(i). Meaning, small partnerships are not subject to TEFRA's audit and litigation procedures unless they elect to have TEFRA apply. *See id.* § 6231(a)(1)(A)–(B). Tax items of small partnerships must be challenged at the partner level in deficiency proceedings. *See Arenjay Corp. v. Comm'r*, 920 F.2d 269, 270 (5th Cir. 1991).

## B

Sarma[2] participated in a tax avoidance scheme called "Family Office Customized partnership" or "FOCus." *Kearney Partners Fund, LLC v. United States*, 803 F.3d 1280, 1283 (11th Cir. 2015) (per curiam). An investment firm called Bricolage Capital, LLC ("Bricolage") and the accounting firm KPMG marketed FOCus to wealthy individuals with recent "large liquidity event[s]." *See id.* at 1283. Sarma was one such individual. In 2001, Sarma expected to realize an $80.9 million capital gain as a result of selling a division of his company, American Megatrends. *Id.* at

---

[2] Petitioners were married when they filed joint returns in 2001 through 2004. Under the Internal Revenue Code, married taxpayers who file joint returns are treated "as one taxable unit," allowing them to aggregate their income and deductions. *Vichich v. Comm'r*, 146 T.C. 186, 193 (2016).

1282. Sarma participated in the FOCus scheme to avoid paying the resulting taxes.

Each FOCus vehicle required the creation of a set of three tiered partnerships: an upper tier, middle tier and lower tier. *Id.* at 1283. The partnerships owned a 99% interest in the partnership in the tier below it, with Bricolage-affiliated entities owning the remaining 1% of each entity. *Id.* at 1284. Sarma invested in the FOCus vehicle comprised of the following partnerships:[3] (1) Nebraska Partners Fund, LLC ("Nebraska"), the upper tier, (2) Lincoln Partners Fund, LLC ("Lincoln"), the middle tier, and (3) Kearney Partners Fund, LLC ("Kearney"), the lower tier.

FOCus was designed to generate significant artificial losses to offset legitimate taxable income. An essential component was a series of offsetting foreign currency exchange forward contracts, referred to as straddles ("FX straddles"), executed by Kearney through Credit Suisse First Boston ("Credit Suisse").[4] The proceeds from the gain legs of the FX straddles were placed into certificates of deposit ("CDs") at Credit Suisse. Kearney reported and realized

---

[3] The entities are in fact limited liability companies, but they are treated as partnerships for federal income tax purposes. We refer to them as partnerships.

[4] This trading activity was complex, *see Kearney Partners Fund*, 803 F.3d at 1286–88, and the precise mechanics are not critical to our analysis. Relevant for our purposes, it involved pairs of transactions which the District Court called "straddles," with each transaction in a given pair being a "leg." *Id.* at 1286. Whichever leg resulted in a gain was "cash settled" and the gain was realized, and Credit Suisse used the gain leg to offset the loss leg. *Id.*

21-12303                Opinion of the Court                7

a $79.1 million gain from the gain legs.[5] The loss legs had not been closed out and remained unrealized. However, the amounts of those losses were locked in.

The scheme also required several ownership changes in the partnerships, which resulted in the partnerships having several short tax periods within the 2001 calendar year.[6] On December 4, 2001, Sarma acquired a 99% interest in Nebraska. Nebraska already owned a 99% interest in Lincoln, and Lincoln owned a 99% interest in Kearney. All three partnerships terminated their tax periods. *See* Treas. Reg. § 1.708-1(b)(2). The three partnerships each filed partnership returns for their respective December 4, 2001 short tax years, and new partnerships were deemed formed on December 5, 2001. *See id.* § 1.708-1(b)(4). On December 14, 2001, Sarma acquired a 99% interest in Lincoln from Nebraska. At this point, Lincoln became a small partnership. *See* 26 U.S.C. § 6231(a)(1)(B)(i). Lincoln and Kearney terminated their tax periods

---

[5] The ultimate taxpayer-partners at the time, who were affiliated with Bricolage, reported the gains on their individual tax returns but "washed away [the gains] through the manipulation of the tax system." *Kearney Partners Fund*, 803 F.3d at 1288 n.13.

[6] A partnership terminates "when 50 percent or more of the total interest in partnership capital and profits is sold or exchanged within a period of 12 consecutive months." Treas. Reg. § 1.708-1(b)(2). The taxable year for the partnership closes when the partnership terminates, and a new partnership is deemed formed. *Id.* § 1.708-1(b)(3)–(4). Thus, the changes in ownership described herein resulted in several "short" tax years for the respective partnerships.

and filed partnership returns for their respective short tax years ending December 14, 2001.

On December 19, 2001, Lincoln (a small partnership) sold its 99% interest in Kearney (a TEFRA partnership) for $737,118 to a Bricolage-affiliated entity. On the date of the sale, Lincoln claimed an outside basis in Kearney of $79,110,062. "Tax basis is the amount used as the cost of an asset when computing how much its owner gained or lost for tax purposes when disposing of it." *Woods*, 571 U.S. at 35. Outside basis is "[a] partner's tax basis in a partnership interest." *Id.* at 35–36. Outside basis increases when the partnership has a gain and decreases when the partnership has a loss. 26 U.S.C. § 705(a). In computing its outside basis in Kearney, Lincoln increased its outside basis to account for the gain legs from the FX straddles, but it did not decrease its basis to account for the unrealized losses from the loss legs. Lincoln reported a $78,392,194 short term capital loss on its partnership return for its December 31, 2001 short tax period. Lincoln allocated $77,608,272 of the Lincoln loss to Sarma in accordance with his 99% partnership interest. Sarma, in turn, claimed a deduction for this loss on his 2001 joint tax return, and carried over the remaining portions to his 2002, 2003 and 2004 returns.

Kearney ended its tax period and filed a partnership return for its December 19, 2001 short tax year. Lincoln's final short tax year in 2001 spanned from December 15, 2001 until December 31, 2001. Lincoln filed partnership returns for 2002, 2003 and 2004 with Sarma as its 99% partner.

## C

The IRS issued nine FPAAs to the partnerships for several short tax years, including Kearney's December 19, 2001 tax year. In

the FPAAs, the IRS determined that the partnerships were an abusive tax shelter and adjusted partnership items to eliminate the benefits of the shelter. The IRS did not issue an FPAA to Lincoln for its December 31, 2001 short tax year, as Lincoln was a small partnership. However, Sarma held an indirect interest in several partnerships during the short tax years for which the FPAAs were issued. *See* 26 U.S.C. § 6231(a)(9), (10). The partnerships sought judicial review of the adjustments in the FPAAs in the United States District Court for the Middle District of Florida.

The District Court presided over a bench trial, at which Sarma testified. *Kearney Partners Fund, LLC v. United States*, 2014 WL 905459, *4, *9, *14 (M.D. Fla. March 7, 2014). Thereafter, the District Court found that "every step of the FOCus series of transactions"—including the creation of the partnerships, the purchases and sales of the various partnerships, including the sale of Kearney, and the FX straddles—was "solely motivated by tax avoidance." *Id.* at *13. Sarma "schemed to create and operate the partnerships (even before [he] formally purchased them) to serve as an abusive tax shelter." *Id.* at *1. The partnerships and their transactions "had no economic substance whatsoever."[7] *Id.* at *1, *13. The District Court sustained the IRS' adjustments that reduced Kearney's gains and losses from the FX straddles to zero. On October 13, 2015, a panel of this Court affirmed. *Kearney Partners Fund*, 803 F.3d at 1281. The partnership-level proceeding became final on January 11, 2016.

---

[7] "[A] transaction is not entitled to tax respect if it lacks economic effects or substance other than the generation of tax benefits, or if the transaction serves no business purpose." *Winn-Dixie Stores, Inc. v. Comm'r*, 254 F.3d 1313, 1316 (11th Cir. 2001) (per curiam).

**D**

The partnership-level court lacked jurisdiction to determine Lincoln's outside basis in Kearney, and so a partner-level proceeding was required to make that adjustment. On September 9, 2016, the IRS issued an affected item notice of deficiency to Petitioners asserting deficiencies for 2001 through 2004 arising out of Sarma's involvement in the FOCus shelter ("2016 notice"). Because Kearney was a sham, the IRS determined that Lincoln had no basis in Kearney. The IRS disallowed the $77.6 million loss deduction Petitioners reported and asserted resulting tax deficiencies. Previously, in 2009 and 2010, the IRS had also issued notices of deficiency to Petitioners for their 2001 through 2004 tax years. Petitioners filed a petition in the U.S. Tax Court challenging the 2016 notice.

Petitioners moved to dismiss for lack of jurisdiction. Petitioners first argued that the statute of limitations expired prior to the IRS's issuance of the 2016 notice. Petitioners additionally argued that the 2016 notice was an invalid third notice of deficiency. For reasons that will be more fully explained below, the resolution of both of these issues hinges on whether Lincoln's outside basis in Kearney is an "affected item." The Tax Court held that it was, and thus found the notice to be both timely and valid.[8]

---

[8] The IRS also moved to dismiss on the grounds that the adjustments in the 2016 notice did not require "partner level determinations" under 26 U.S.C. § 6230(a) and thus deficiency procedures were not required. The Tax Court denied the motion, finding that partner-level determinations, and thus deficiency procedures, were required.

Respondent moved for summary judgment. Petitioners argued, in relevant part, that because Kearney was found to be a sham for tax purposes, Lincoln should be deemed the owner of Kearney's assets and Lincoln's sale of its Kearney interest should be deemed a sale of Kearney's assets. The Tax Court granted summary judgment for Respondent and rejected Petitioners' deemed ownership theory. It held that Lincoln's outside basis in Kearney was zero, reasoning that a partner cannot have any basis in a sham partnership. *See Woods*, 571 U.S. at 41–42. Lincoln therefore had no gain or loss on the Kearney sale, Lincoln was not entitled to deduct the Lincoln loss, and Petitioners were not entitled to deduct the $77.6 million pass through loss.

Petitioners raise three issues on appeal. First, whether the Tax Court erred by finding that the statute of limitations had not expired prior to the issuance of the 2016 notice. Second, whether the Tax Court erred by finding that the 2016 notice of deficiency was a valid multiple notice. Both of these issues rise and fall with a single determination: whether Lincoln's outside basis in Kearney (*i.e.*, a small partnership's outside basis in a TEFRA partnership) is an "affected item." Third, whether the Tax Court erred by failing to treat Lincoln's sale of Kearney as a sale of Kearney's assets. After careful review, we affirm.

## II

We review de novo the Tax Court's legal conclusions, including the Tax Court's interpretation of the Internal Revenue Code. *Greenberg v. Comm'r*, 10 F.4th 1136, 1155 (11th Cir. 2021) (citing *Highpoint Tower Tech. Inc. v. Comm'r*, 931 F.3d 1050, 1056 (11th Cir. 2019)). We also review the Tax Court's grant of

summary judgment de novo.[9] *Roberts v. Comm'r*, 329 F.3d 1224, 1227 (11th Cir. 2003) (per curiam). Summary judgment is warranted where the record establishes "that 'there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.'" *Baptiste v. Comm'r*, 29 F.3d 1533, 1537 (11th Cir. 1994) (quoting Tax Ct. R. 121(b)).

## A

The general limitations period for assessing tax or issuing a notice of deficiency is three years after the taxpayer files his or her individual return. 26 U.S.C. § 6501(a). There is an exception, though, for partnership items. *See id.* § 6501(n)(2) ("For extension of [the] period in the case of partnership items . . . see section 6229."). Under § 6229, "the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before" three years from the date on which the partnership return is filed. *Id.* § 6229(a). Section 6229(a) therefore "holds open" the § 6501 limitations period for the assessment of tax attributable to partnership items or affected items. *Rhone-Poulenc Surfactants & Specialties, L.P. v. Comm'r*, 114 T.C. 533, 544 (2000).

---

[9] Petitioners moved for reconsideration of the orders denying their motion to dismiss and granting Respondent's motion for summary judgment, both of which the Tax Court denied. We review Tax Court orders denying motions for reconsideration for abuse of discretion. *Huminski v. Comm'r*, 679 F. App'x 926, 927 (11th Cir. 2017) (per curiam) (citing *Byrd's Estate v. Comm'r*, 388 F.2d 223, 234 (5th Cir. 1967)). Since we find no error in the Tax Court's orders denying Petitioners' motion to dismiss or granting Respondent's motion for summary judgment based on a de novo review, we likewise find no abuse of discretion in denying the motions for reconsideration of those orders.

The mailing of a timely FPAA suspends the statute of limitations until the conclusion of the partnership-level proceeding and for one year thereafter. 26 U.S.C. § 6229(d).

The IRS issued the 2016 notice on September 9, 2016. If the 2016 notice adjusts an affected item, as Respondent argues, the statute of limitations did not expire until January 11, 2017—one year after the Kearney proceeding became final. Petitioners, however, contend that Lincoln's outside basis in Kearney is not an affected item, therefore § 6229 does not apply, and the statute of limitations under § 6501(a) expired no later than February 16, 2013. The timeliness of the 2016 notice thus depends on whether Lincoln's outside basis in its Kearney interest is an affected item. We hold that it is.

An affected item is "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5). The determination that a partnership lacks economic substance and is a sham is a partnership item. *Woods*, 571 U.S. at 39; *Highpoint Tower Tech.*, 931 F.3d at 1058. Lincoln's outside basis in Kearney is certainly an "item," and so the operative question is whether Lincoln's outside basis in Kearney is "affected by" the District Court's determination that Kearney was a sham.

A partner's outside basis in a partnership interest is generally an affected item. *See Woods*, 571 U.S. at 41–42. Here, Lincoln claimed an inflated outside basis in Kearney based upon the artificial gains Kearney generated through the sham FX straddles. The inflated basis allowed Lincoln to claim an artificial loss on its sale of its Kearney interest. The process of calculating outside basis "presupposes that the partnership was valid." *RJT Investments X v. Comm'r*, 491 F.3d 732, 736 (8th Cir. 2007). And once a partnership

is "deemed not to exist for tax purposes, no partner could legitimately claim an outside basis greater than zero." *Woods*, 571 U.S. at 44. The determination that Kearney was a sham factors into Lincoln's computation of its gain or loss on the sale of its Kearney interest. Thus, Lincoln's outside basis in Kearney is an item affected by a partnership item.

Nothing in the statutory text compels a different result when the partner is a small partnership. Small partnerships are not "partnerships" within the meaning of TEFRA, so they cannot have "partnership items." 26 U.S.C. §§ 6231(a)(1), (3). The items of a small partnership are thus nonpartnership items. *Id.* § 6231(a)(4). That designation, however, does not prevent them from also being "affected item[s]," which are "*any item[s]*" affected by a partnership item. *Id.* § 6231(a)(5) (emphasis added). Because Kearney's sham status is a partnership item of Kearney, and because Lincoln's outside basis in Kearney is affected by that partnership item, Lincoln's outside basis in Kearney can be an affected item.

Treasury Regulation § 301.6231(a)(5)-1(b) supports this plain reading of the statutory definitions. It provides: "[t]he basis of a partner's partnership interest is an affected item to the extent it is not a partnership item." Treas. Reg. § 301.6231(a)(5)-1(b). Here, "[t]he basis of [Lincoln's] partnership interest [in Kearney] is an affected item to the extent it is not a partnership item." It cannot be a partnership item of Lincoln because Lincoln is statutorily barred from having partnership items. No party suggests that Lincoln's outside basis in Kearney is a partnership item of Kearney. Since Lincoln's outside basis in Kearney is not a partnership item, it is an affected item.

Petitioners' argument to the contrary rests on an untenable analogy to TEFRA partnerships. The analogy works as follows: An upper-tier TEFRA partnership's outside basis in a lower-tier TEFRA partnership could not be an affected item because it would be a partnership item of the upper-tier partnership. Nonpartnership "partnership-level" items of a small partnership should receive the same treatment as partnership items of a TEFRA partnership. It follows that a small partnership's outside basis in a TEFRA partnership would be a "partnership-level" nonpartnership item, and the IRS should have addressed it at the "Lincoln partnership level" or the "Lincoln level." Put simply, this analogy is contrary to the text and structure of TEFRA.

There is at least a colorable textual argument to support the proposition that an upper-tier TEFRA partnership's outside basis in a lower-tier partnership would be a partnership item of the upper-tier and not an affected item.[10] *See* 26 U.S.C. § 6231(a)(3), (a)(5); Treas. Reg. § 301.6231(a)(5)-1(b). But critically, small partnerships cannot have "partnership items." *American Milling, LP v. Commissioner* does not help Petitioners for that very reason—it involved an upper-tier TEFRA partnership's basis in a lower-tier TEFRA partnership. *See* T.C. Memo 2015-192 at *1, *5 (2015). The textual bar that could arguably prevent an upper-tier TEFRA partnership's outside basis in a lower-tier TEFRA partnership from being an affected item disappears when the upper-tier partnership is a small partnership.

---

[10] The Parties debate whether an upper-tier TEFRA partnership's outside basis in a lower-tier partnership could be an affected item. We need not resolve this dispute, since Lincoln was not a TEFRA partnership during its December 31, 2001 tax year.

Nor does TEFRA's structure evidence Congressional intent for "partnership level" items of small partnerships to receive like treatment as partnership items of TEFRA partnerships. TEFRA does not endeavor to treat uniformly all entities that file returns as partnerships. Rather it provides for a single unified proceeding to resolve *partnership items* of a given "partnership," as that term is statutorily defined, for the purpose of uniform application of the partnership-level items among the partners. *See, e.g.*, *JT USA LP v. Comm'r*, 131 T.C. 59, 65 (2008). This concept of "levels" matters for TEFRA partnerships because separate proceedings exist and jurisdictional limits apply to the items that can be resolved at each level. *See* 26 U.S.C. §§ 6226(f), 6230(a)(2)(A)(i). It is an irrelevant distinction for small partnerships, which are exempt from having entity-level items resolved in entity-level proceedings. *See Wadsworth v. Comm'r*, T.C. Memo 2007-46, *6 (2007) ("The small partnership exception permits this Court to review in a[n] [individual partner's] deficiency suit items that otherwise would be subject to partnership-level proceedings."). Indeed, we find Petitioners' advocacy for a comparison to TEFRA's treatment of partnership items hard to reconcile with their later contention that Congress did not intend for small partnerships to be subject to TEFRA's audit and litigation rules at all.

As a final matter, the Tax Court did not "open up" Lincoln's December 31, 2001 "otherwise closed" tax year, as Petitioners contend. Br. of Petitioners at 36–38. "Congress anticipated that the taxable year in which an assessment is made would not always be the same as the taxable year in which the adjustments are made," which the intersection between § 6501 and § 6229 reflects. *See Kligfeld Holdings v. Comm'r*, 128 T.C. 192, 202–05 (2007) (holding that the Internal Revenue Code does not require any "matching"

of the partnership and partner's respective taxable years). Section 6229(a) establishes the minimum period in which the IRS must assess tax attributable to partnership items or affected items against the *ultimate taxpayer*, "notwithstanding the period provided for in § 6501." *Greenberg*, 10 F.4th at 1164 (quoting *Rhone-Poulenc*, 114 T.C. at 542) (internal quotation marks omitted). Put another way, "section 6229(a) holds open the § 6501 limitations period as to all partners for a fixed period of time, thereby providing a minimum period within which to assess adjustments attributable to partnership items against all partners." *Rhone-Poulenc*, 114 T.C. at 544. Here, that would be Petitioners. Lincoln is a flow-thru entity that does not itself pay taxes. TEFRA applies "to any person holding an interest" in a TEFRA partnership during the taxable year at issue. Treas. Reg. § 301.6233-1(a). Sarma held an indirect interest in Kearney through Lincoln. *See* 26 U.S.C. § 6231(a)(10) (defining "indirect partner"); *id.* § 6231(a)(9) (defining "pass-thru partner"). Sarma is a person to whom an adjustment of an affected item from the partnership-level proceeding can be applied. *See id.* § 6229(a).

The filing of the FPAA, the timeliness of which Petitioners do not contest, suspended the limitations period for assessment of tax attributable to affected items until January 11, 2017. The 2016 notice asserts a deficiency that is attributable to an affected item. Accordingly, the statute of limitations had not expired when the IRS issued the September 9, 2016 notice of deficiency, as the Tax Court correctly found.

## B

Having found that Lincoln's outside basis in Kearney is an affected item, it then follows that the 2016 notice was valid. Section

6212(c)(1) generally bars the issuance of multiple notices of deficiency to the same taxpayer for the same tax year. Petitioners contend that the 2016 notice is invalid in light of the two prior-issued notices and, thus, that the Tax Court lacked jurisdiction. *See GAP Corp. & Subsidiaries v. Comm'r*, 114 T.C. 519, 521 (2000) ("[The Tax] Court's jurisdiction to redetermine a deficiency in tax depends upon a valid notice of deficiency . . . .").

However, Congress carved out an exception to this general rule in § 6230(a)(2)(C) for affected item notices of deficiency. *See* 26 U.S.C. § 6230(a)(2)(A), (C) ("Notwithstanding any other law or rule of law, any notice or proceeding under subchapter B with respect to a deficiency [attributable to affected items which require partner level determinations] shall not preclude or be precluded by any other notice, proceeding, or determination with respect to a partner's tax liability for a taxable year."); *see also Rawls Trading, L.P. v. Comm'r*, 138 T.C. 271, 291 (2012) (describing § 6230(a)(2)(C) as an exception to the "no-second-deficiency notice" rule set forth in § 6212(c)(1)). Because the 2016 notice adjusts an affected item, it is not subject to the general rule in § 6212(c)(1). The exception in § 6230(a)(2)(C) applies, and the Tax Court correctly found the 2016 notice to be valid.

## C

We now turn to Petitioners' deemed ownership theory. Petitioners do not challenge the Tax Court's finding that Lincoln had no outside basis in Kearney in light of Kearney being a sham. Rather, Petitioners argue that the Tax Court should have treated Lincoln's sale of its Kearney interest as something wholly

different—a sale of Kearney's assets.[11] They argue that Kearney, as a sham partnership, must be treated as an agent or nominee of its owners. Lincoln should thus be deemed the owner of Kearney's assets, and Lincoln's sale of its Kearney interest deemed an asset sale. Petitioners contend that the Tax Court needed to resolve Lincoln's basis in Kearney's assets, namely the CDs (which Kearney purchased with the gains from the FX straddles), and determine the amount of Lincoln's loss on the deemed asset sale. Their position is that Lincoln took a cost basis of $81.8 million in the CDs. Were that the case, Lincoln would have sold an asset worth $81.8 million for $717,868—less than one percent of its value—yielding an $81 million loss.

When a partnership is found to be a sham for tax purposes, the rules governing the income taxation of partners (subchapter K of chapter 1) do not apply, and the activities of the purported partnership are treated as engaged in by one or more of the purported partners. *436 Ltd. v. Comm'r*, T.C. Memo 2015-28, *34–*35 (2015). A sham partnership has no identity separate from its owners and is treated as an agent or nominee. *Tigers Eye Trading, LLC v. Comm'r*, 138 T.C. 67, 96, 99 (2012), *aff'd in part, rev'd in part Logan Tr. v. Comm'r*, 626 F. App'x 426 (D.C. Cir. 2015). But the transactions of a disregarded partnership still need to be addressed, "to the extent [the reviewing court] ha[s] jurisdiction." *436 Ltd.*, T.C. Memo 2015-28 at *35.

If a sham partnership files an informational return, which Kearney did, the return is treated as though it were filed by an

---

[11] Petitioners suggest that Respondent conceded that Lincoln should be deemed the owner of the CDs. No such concession was made, as the Tax Court correctly found.

entity subject to TEFRA. 26 U.S.C. § 6233; Treas. Reg. § 301.6233-1. Meaning, TEFRA applies to Kearney, its items, and any person holding an interest in Kearney for that taxable year. Treas. Reg. § 301.6233-1. TEFRA, via § 6226(f), vests the partnership-level court with jurisdiction to determine the entity's items that would have been partnership items, as well as to determine the proper allocation of any items to the purported partners. *Tigers Eye*, 138 T.C. at 95. Basis in the CDs would be a partnership item of Kearney. *See Superior Trading, LLC v. Comm'r*, 137 T.C. 70, 91 n.20 (2011) (explaining that inside basis of a partnership asset is a partnership item). In the instant partner-level proceeding, the Tax Court lacked jurisdiction over Kearney's partnership items. The cases on which Petitioners rely do not support deeming the Kearney sale as an asset sale by Lincoln. Those cases were partnership-level proceedings in which the purported partnerships distributed assets with inflated bases to their partners. *Tigers Eye*, 128 T.C. at 80; *New Millennium Trading, LLC v. Comm'r*, T.C. Memo 2017-9, * 32 (2017); *436 Ltd*, T.C. Memo 2015-28 at *9. Kearney did not distribute the CDs to Lincoln. Nor did the District Court treat Kearney as having distributed the CDs to Lincoln, or treat Lincoln as the owner of the CDs.

To recharacterize Lincoln's sale of its Kearney interest as an asset sale would run afoul of the principle that "a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not, and may not enjoy the benefit of some other route he might have chosen to follow but did not." *Meruelo v. Comm'r*, 923 F.3d 938, 945 (11th Cir. 2019) (quoting *Comm'r v. Nat. Alfalfa Dehydrating & Milling Co.*, 417 U.S. 134, 149 (1974)) (internal quotation marks omitted). Taxpayers generally must

accept the tax consequences flowing from "the transaction they actually execute" (meaning, they are "bound by the 'form' of their transaction"), and they "may not reap the benefit of some other transaction they might have made" (meaning they cannot "argue that the 'substance' of their transaction triggers different tax consequences"). *Id.* (quoting *Selfe v. United States*, 778 F.2d 769, 773 (11th Cir. 1985)) (internal quotation marks omitted). Lincoln reported this transaction as a sale of its interest in Kearney on its December 31, 2001 partnership return. Kearney did not distribute the CDs to Lincoln, and the District Court did not treat Lincoln as the owner of the CDs. What it did, rather, was find Kearney to be a sham and eliminate the tax consequences of the shelter at the partnership level, thereby enabling the IRS to reduce Lincoln's outside basis in Kearney to zero and disallow Petitioners' $77.6 million loss deduction. That is not the tax consequence Petitioners contemplated, but it is the tax consequence to which they are bound.

Petitioners' reliance on *Gregory v. Helvering*, 293 U.S. 465 (1935), and the substance over form doctrine is misplaced. Substance over form is an exception to the general rule that courts respect the form of the transaction, which allows courts "to determine the true nature of a transaction disguised by formalisms that exist solely to alter tax liabilities." *Shockley v. Comm'r*, 872 F.3d 1235, 1247 (11th Cir. 2017) (quoting *John Hancock Life Ins. Co. (U.S.A.) v. Comm'r*, 141 T.C. 1, 57 (2013)) (internal quotation marks omitted). "Taxpayer[s] can not [sic] argue substance over form, except when necessary to prevent unjust results." *Adobe Resources Corp. v. United States*, 967 F.2d 152, 156 (5th Cir. 1992) (citing *Spector v. Comm'r*, 641 F.2d 376 (5th Cir. Unit A 1981)). The circumstances must be "exceptional." *Meruelo*, 923 F.3d at

945. There is nothing unjust about holding Petitioners to the form of the transaction they chose. That is especially so considering that the form of the transaction—the sale of an interest in a partnership, albeit one later determined to be a sham—was an integral and pre-planned part of an abusive tax shelter. The Tax Court did not err in declining to recharacterize Lincoln's sale of its Kearney interest.

## D

As a final matter, we reject Petitioners' contention that the Tax Court failed to address due process concerns because Petitioners "were never given the opportunity to directly challenge" the disallowance of the Lincoln loss. Br. of Petitioners at 14 n.4. Lincoln and Sarma were parties to the Kearney proceeding—Lincoln as a direct partner of Kearney and Sarma as an indirect partner of Kearney through Lincoln. *See* 26 U.S.C. § 6226(c) (partners are treated as parties to partnership-level proceedings); *id.* § 6231(a)(2) (defining "partner" as including "any other person whose income tax liability . . . is determined in whole or in part by taking into account directly or indirectly partnership items of the partnership"). Sarma apparently received the statutorily required notice of the Kearney proceeding and participated in it. *See id.* § 6223(h) (providing for notice to indirect partners through the pass-thru partner). As the Second Circuit has explained, the expansive definition of "partner" and permitting all "partners" notice and participation rights ensures that those whose tax liability is affected by partnership-level proceedings receive due process. *Callaway v. Comm'r*, 231 F.3d 106, 110 (2d Cir. 2000).

Petitioners had the opportunity to persuade the District Court that Kearney was not a sham and that its activities had economic substance. *See Napoliello v. Comm'r*, T.C. Memo 2009-

21-12303               Opinion of the Court                    23

104, *7 (2009), *aff'd* 655 F.3d 1060 (9th Cir. 2011) ("TEFRA's notice provisions generally safeguard due process rights by providing partners with notice of the partnership adjustment and an opportunity to participate in the partnership-level proceeding."). Sarma testified at the bench trial and the District Court made credibility determinations. *Kearney Partners Fund*, 803 F.3d at 1285. Petitioners then challenged the effects of the partnership-level adjustments on their own tax items in the instant proceeding. Petitioners received and availed themselves of notice and the opportunity to be heard, and we find no due process violations.

★  ★  ★

For the foregoing reasons, we **AFFIRM**.